John Carpenter, a young negro man, was indicted and tried for burglary in breaking and entering in the night time into the dwelling-house of Darling Johnson in Murderkill hundred, on the 9th day of May 1872, with intent to commit a rape on the body of Eliza J. Johnson, a young white girl and a daughter of his, aged fourteen years. She testified that she would be fourteen years old in August next, and that on the night of the 9th of May last she was asleep in bed with her little sister and brother younger than her in an end room in the second story of her father's house, in the end of which there is one window which was down when she went to bed that night, and that she was waked up during the night by feeling a hand on her breast, and felt it more than once on her breast, and at first as she awoke she *Page 368 
thought it was the hand of her brother or her sister, but soon became satisfied that it was not, and waked her sister and told her some one had pulled the clothes off her, and she believed there was some body in the room. She then got out of bed and started for the head of the stairs when her sister said she would go too and calling to her father who with her mother was sleeping in the room below, they went down to their room together and she then waked her father and told him she believed there was some body in their room. Both her father and mother got up and they all went up stairs together, and looking under the bed she saw something under it and thought it was the bed clothes which had fallen off the bed, and so said to her father, but he then looked under it and found it was the prisoner; and who stated in his testimony that he found the prisoner lying on his side well back under the bed, with his face outward and his arms elbowed across and over it to hide it, but he at once recognized him and called him by name and he answered to it. He left him there until his daughter could run over for her uncle, John Cleaver, who lived near, and with whom the prisoner was then living and working as a hired hand on his place. The end window in the bed-room of his children was raised entirely up and there was a ladder outside of the end of the house extending from the ground up to near the window sill; and Mr. Cleaver testified that as soon as he got over there he recognized it as his ladder, and that it had been left at the close of that day leaning against the end of his house, and whence it had been taken during the night over to Mr. Johnson's house. Mrs. Johnson testified that the window the ladder was at had been up during the day, but that she let it down herself that evening about super time, and that there was no ladder anywhere on their premises at that time until that was brought there. The constable who arrested the prisoner testified that he voluntarily told him that he carried the ladder over there from Mr. Cleaver's that night, leaned it against the end of the *Page 369 
house under the window, went up it and raised the window which was then down, and got into the room through it. He said he did not know why he did it, but he meant no harm by it.
This is an indictment against the prisoner, John Carpenter, for the crime of burglary alleged to consist in his breaking and entering in the night time on the 9th of May last, the dwelling-house of Darling Johnson in Murderkill hundred, with the felonious intent to commit a rape on the body of Eliza J. Johnson in the said dwelling-house. There can be no question about the breaking and entering of the dwelling-house in the night time as alleged, if the jury believe the evidence, which it seems is not disputed, that when he ascended to the window by means of the ladder he found it down or lowered, though not fastened, and raised it without any breaking or unfastening of it whatever, and entered the house, or the room into which it opened, through the window thus raised by him; for that would constitute a constructive breaking and entering into the house in law, and would have the same effect in law, as if there had been an actual and forcible breaking and entering into it by him on that occasion. But in addition to this the State must also prove to your satisfaction beyond a reasonable doubt, that he so broke and entered it with the felonious intention specifically alleged in the indictment, that is to say, with the intent to commit a rape on the body of Eliza J. Johnson in the dwelling-house, and this is the most material and important averment contained in the indictment, for it is this, if the allegation be true, which constitutes the breaking and entering into the dwelling-house the crime of burglary for which he stands indicted; and it is also the allegation of a substantive and material fact which must be proved to the satisfaction of the jury beyond a reasonable doubt, as much so as any other material and substantive allegation contained in it. Intentions, it is true, and criminal intentions in particular, *Page 370 
are in general only to be inferred and ascertained from the acts and conduct of the party and the facts and circumstances attending them which reasonably indicate them to the minds of others. A rape, however, can only be committed with actual force and violence and against the will of the party on whom it is committed, or by putting her in great fear or terror; and if sexual connection is sought or obtained by milder means, or in any other way with the consent or the silent submission of the party, it cannot constitute the crime of rape in contemplation of law. It would therefore be for the jury to consider and determine in this case from all the facts and circumstances proved, and the fact that the father and mother of the young girl were at the time sleeping in the room immediately below her, and that a younger sister and brother wore then asleep in the same bed with her, whether the prisoner under such circumstances broke and entered the house with the intent then and there to have sexual connection with the young girl Eliza J. Johnson by force and against her will. For if that was not the intent with which he broke and entered the house, then he did not break and enter it with the intent to commit a rape upon her, and he ought not to be convicted under the indictment. If, however, the jury should be satisfied from the evidence that he so broke and entered it with that intent and it was solely a question of fact for their consideration, he should be convicted.